**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

ALICIA LEWIS,

Case No.

                                   Plaintiff,

**AMENDED COMPLAINT**

        - against -

DL GREENVALE LLC. d/b/a LESTER'S OF
GREENVALE

**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

                                   Defendant.

---------------------------------------------------------------------X

    ALICIA LEWIS ("Plaintiff"), by and through her attorneys, PHILLIPS & ASSOCIATES,

Attorneys at Law, PLLC, against DL GREENVALE LLC. d/b/a LESTER'S OF GREENVALE,

("Defendant") alleges upon knowledge as to herself and her own actions and upon information

and belief as to all other matters as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to the discrimination and retaliation provisions of the (i) **The**
      **Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, *et seq.* ("ADA"); and (ii)
      The **New York State Human Rights Law**, New York State Executive Law § 296, *et seq.*
      ("NYSHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result
      of being discriminated against and retaliated against by Defendant on the basis of her
      **disability (Severe and Chronic Migraines)** a chronic health impairment that affects one
      or more of Plaintiff's major life activities.

## JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises
      under 42 U.S.C. §12101, *et seq.*

3.    The Court has supplemental jurisdiction over all state and county law claims pursuant to 28 U.S.C. §1367.

4.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PROCEDURAL PREREQUISITES

5.    Plaintiff timely filed a complaint, upon which this Complaint is based, with the United States Equal Employment Opportunity Commission ("EEOC").

6.    Plaintiff received a Notice of Right to Sue from the EEOC, dated March 27, 2024 with respect to the instant charges of discrimination.  A copy of the Notice is annexed to this Complaint.

7.    This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

8.    At all times material, Plaintiff was and is a resident of the state of New York.

9.    At all times material, Plaintiff was and is a "person" and "employee" entitled to protection as defined by the ADA and NYSHRL.

10.   At all times material, DL GREENVALE LLC., d/b/a LESTER'S OF GREENVALE, ("Defendant") owns and operates women's clothing stores.

11.   At all times material, Plaintiff worked for Plaintiff's Greenvale location located at 90 Northern Blvd, Greenvale, NY 11548.

12.   At all times material, Defendant "employs" 15 or more employees and is therefore an "employer" within the meaning of ADA and NYSHRL.

13.   At all times material, Plaintiff was an employee of Defendant.

2

## MATERIAL FACTS

14.    In or about February 2022, Plaintiff began working for Defendant as a full-time sales associate earning $18.00 per hour, with an intended regular work schedule of approximately 40 hours per week.

15.    At all times material, Plaintiff was qualified for her position given her extensive sales experience.

16.    Plaintiff was initially hired by Anne Santillo ("Ms. Santillo"), but Ms. Santillo left shortly after Plaintiff's hire, in or around March 2022.

17.    In or around April 2022, Celia Shyman ("Ms. Shyman"), Store Manager, took over as Plaintiff's manager.

18.    Thereafter, all times material, Plaintiff worked under the supervision of Ms. Shyman, as well as Area Manager Andrea Forbes ("Ms. Forbes"), and Assistant Manager Linda Bralower ("Ms. Bralower").

19.    At all times material, Plaintiff was a dedicated employee with no write-ups or disciplinary actions.

20.    As a Sales Associate, Plaintiff's duties and responsibilities included but were not limited to assisting customers, putting out new merchandise, keeping the sales floor neat and organized, completing sales, assisting with inventory, and completing transactions with customers.

21.    At all times material, Plaintiff was diagnosed with chronic severe migraines which caused Plaintiff to suffer with chronic pain, sensitivity to light, sensitivity to sound, nausea, vomiting, dizziness, and weakness.

3

22.  Plaintiff's diagnosis of chronic migraines was and is a health impairment that substantially limits one or more of Plaintiff's major life activities. Plaintiff's disability affects Plaintiff's ability to sleep, concentrate, communicate, think, stand, read, drive, walk, interact with others, work, and eat.

23.  When Plaintiff experiences a migraine, she is often unable to sleep and she loses vision in her right eye. Plaintiff is further unable to drive and perform other manual tasks, including reading, cooking food for her family and walking her dog.

24.  Plaintiff's migraines also substantially impact her digestive system and automatic nervous system as she experiences nausea and vomiting. The migraines likewise impact her neurological system as she suffers intense pain in her head, which is exacerbated by light.

25.  Plaintiff additionally experiences tingling sensations in her extremities, weakening her arms and legs and preventing her from walking, typing, picking things up and bending over.

26.  Despite Plaintiff's disability, Plaintiff remained able to perform the essential functions of her position.

27.  Indeed, Plaintiff frequently suffered from intense and debilitating migraines, which often came on without warning and caused Plaintiff to feel severe pain, discomfort, and dizziness.

28.  Plaintiff notified Defendant multiple times of her disabilities and explained how the chronic and severe migraines affected Plaintiff's ability to work.

29.  On multiple occasions, Plaintiff suffered severe migraines while at work. On such occasions, Plaintiff would ask Store Manager, Ms. Shyman, to leave early but Ms. Shyman consistently denied Plaintiff's requests and instead told Plaintiff to take her pills.

30.   Further, on multiple occasions when Plaintiff was obligated to call out of work due to her debilitating migraines and related symptoms, Ms. Shyman would reply with apathetic, sarcastic, and demeaning comments such as "you don't even try", "Thank you as always for being a team player", and "I suggest you take a nap and some meds and come to work, I don't understand how you think this is ok?"

31.   Indeed, Plaintiff repeatedly informed Ms. Shyman of her disability and it's debilitating symptoms.

32.   However, Defendant repeatedly failed to speak with Plaintiff in good faith or engage in any interactive process with Plaintiff to meaningfully discuss Plaintiff's disability, needs, or reasonable accommodations to assist Plaintiff with her duties.

33.   For example, on or about May 13, 2022, Plaintiff texted Ms. Shyman and explained, "Celia…suffering from a severe migraine. Didn't sleep all night vomiting and in horrible pain. I am so sorry. Can't plan these, but I didn't feel good yesterday, so I knew it was coming on…I need to take my Rx meds and sleep it off. I can't drive when I take them. I'm not going to make it in. I feel terrible but migraine attacks aren't planned. Attached is a note I keep from my neurologist. Can you please inform Linda, sometimes in crew she [does not] see message till much later." Plaintiff then also attached a letter from her doctor, NYU Langone Neurology associate, Ronald Fred Klinger, M.D., ("Dr. Klinger.").

34.   Ms. Shyman then replied in a hostile tone, "a doctor's note needs a date Alicia…you don't even try. That's the point. I can't. I'm sorry." Plaintiff replied explaining, "yes for you to have on file stating my medical condition." Plaintiff further explained "you can't try when you have a migraine that['s] what [people] don't understand, I do care. But I am no help as sick as I feel…"

5

35. In or about July 2022, Plaintiff spoke with Ms. Forbes and Ms. Shyman and requested time off for the week of August 15, 2022. Plaintiff explained she was expecting her first grandchild and explained her daughter in law had experienced a difficult pregnancy and was scheduled to have a c-section delivery on August 15, 2022. As such, Plaintiff requested the week off to help her family and transport them back to New Jersey after the birth of the child.

36. Ms. Forbes then denied Plaintiff's request time off and claimed Plaintiff had already missed too many days of work due to calling out sick. Ms. Forbes then claimed Plaintiff could pick three days of unpaid time off. Plaintiff explained she only calls out sick when her migraines are unbearable and reiterated how important this birth was to her. Ms. Forbes then retorted in an apathetic and hostile tone, "I have a business to run, are you thinking with your brain or your heart?"

37. Ms. Shyman ended the conversation by telling Plaintiff, "You make your bed, you lie in it," referring to Plaintiff's use of sick days. As such, Plaintiff understood her denied time off request was simply retaliation for having taken sick days to tend to her health.

38. In the months that followed, Defendant repeatedly treated Plaintiff in a hostile and aggressive manner, repeatedly failed to engage in good faith communication with Plaintiff regarding any reasonable accommodation that could help Plaintiff with her disability, and purposely scheduled Plaintiff for less hours every week until she was ultimately removed from the schedule.

39. In or about August 5, 2022, Plaintiff called out of work and explained "Celia, it's [Plaintiff], I have a full blown migraine, was up all night with cold compressed. Just took my meds and stomach now so bad, I tried to get ready but literally can't keep my head up

6

especially to wear a mask and have limited air conditioning the way I feel.[1] I need to sleep

it off. I won't be able to work especially drive."

40.     On or about September 16, 2022, while at work, Plaintiff started to feel nauseous, dizzy,

sweaty and lost peripheral vision in her right eye. Plaintiff decided to take her prescription

migraine medication as a precaution. When Plaintiff spoke with Ms. Shyman about her

condition after lunch, Ms. Shyman told her that she could not leave and that she "better

fucking be here tomorrow!"

41.     The following day, Plaintiff once again felt terrible and woke up feeling dizzy, with blurred

vision but still went to work. At work, Plaintiff informed Linda Bralower, Assistant

Manager, of her condition, as Ms. Shyman was not in that day, and Plaintiff placed a call

to her neurologist, leaving a message. Later that day, Plaintiff's neurologist returned her

call and advised her to go directly to the emergency

42.     Plaintiff rushed to the NYU Health Langone emergency room. Plaintiff was examined by

the emergency room physician and sent for CT brain imagining. The emergency room

ultimately concluded it was another migraine and scheduled a follow up appointment with

Dr. Steven P Linzer, M.D. ("Dr. Linzer") for September 18, 2022. The Emergency room

further scheduled a follow up appointment with Plaintiff's NYU Neurologist, Dr. Klinger.

43.     On or about September 20, 2022, Plaintiff called out of work as she was suffering another

horrific migraine with eye pain.

44.     That same day, Plaintiff visited the South Shore Eye Care LLP office and saw a doctor

regarding her migraines and terrible eye pain. The ophthalmologist at South Shore Eye

---

[1] At the time, the air conditioning in Defendant's store was broken and its employees were required to wear masks.

Care concluded that Plaintiff suffered from an ocular migraine and issued Plaintiff a doctor's note explaining, "Alicia Lewis was examined in our office today. The patient may return to work/school on 9/22/22 if feeling better. If any further information is necessary, please do not hesitate to contact our office. Thank you."

45.     On or about October 6, 2022, Plaintiff again suffered another terrible migraine. As such, Plaintiff texted Ms. Shyman at approximately 8:04 a.m. and explained, "I know you hate these early morning texts, but I need to go back to sleep, migraine so severe with pain…felt the weird eye thing last night…went to bed. Woke up to massive pain and vomiting…" Plaintiff went on to explain how sick she felt, and begged Ms. Shyman to understand. However, Ms. Shyman again responded in a condescending manner, shaming Plaintiff for needing to take sick time.

46.     On or about October 24, 2022, Plaintiff texted Ms. Shyman informing her that Plaintiff was unwell and would need to stay home. Ms. Shyman then replied at approximately 8:15 a.m. stating, "Alicia I'm not doing this anymore. You are unreliable and selfish and put us in [a] terrible position once a week. You don't even care. This is not the right fit for you. You need something where you can come and go as you, please. There have been no repercussions this far and I'm so disgusted by this."

47.     On or about November 10, 2022, Plaintiff texted Ms. Shyman and explained she was suffering a migraine attack and had not been able to sleep all night due to her migraine and vomiting. Plaintiff then requested the day off, and explained "…I've taken so much meds I can't take anymore…nothing is helping. I'm sure it's a combination of migraine and nerves about Ira's surgery, crazy nervous about bladder cancer findings, his bleeding started again. Literally can't get out of bed. Unfortunately, I suffer from this disability for years and it's

not getting better. Trust me I'd rather be at work with everyone than home suffering. I will be in touch with my neurologist hopefully he can adjust my medication. I know you will be pissed but I cannot drive or work in this condition, let alone get out of bed at this point, I need to sleep it off, this is a neurological disability and unfortunately, I have been suffering for years, I know you don't understand. It wipes me out I seriously cannot function with this pain and nauseous feeling. I will speak with you later."

48. On or about November 11, 2022, Plaintiff was still suffering from her ongoing and terrible migraine.  As such, Plaintiff called out of work and texted Ms. Shyman explaining, "feeling worse than yesterday. Dr. [does not] open till 9. Need to get over to him Ira said he will leave work and take me. Felt a little better last night but again at 4am it starts…my head is falling off and I am extremely dizzy hoping I can get to Dr. or at least speak with him to know what to do. I know I'm extremely nervous about Ira's surgery, but I can't take this pain and sickness. my body is shaking, and the meds are not helping anymore. I will let you know if I get a Dr. appt, my eyes are even swollen, it's really scary. Please don't yell and reprimand me I really don't feel well."

49. Later that day, Plaintiff visited the NYU Langone Neurology Associates office of Massapequa and saw Gladys Grace Andres Llaguno, NP ("Ms. Llaguno").

50. Ms. Llaguno then wrote Plaintiff a letter excusing her from work and explained "Ms. Alicia Lewis was seen in my office on 11/11/2022. Patient is experiencing severe frequent migraine. It is debilitating and cannot perform her functions at work. Please excuse her on 11/10/2022, 11/11/2022, and 11/12/2022. She needs to rest and hopefully the additional medications for her migraine will help alleviate her pain."

51.     Plaintiff provided the letter to Ms. Shyman, but Ms. Shyman continued to act frustrated with Plaintiff's disability.

52.     On or about December 16, 2023, Plaintiff called out of work as she was suffering from a terrible migraine and dizziness. Ms. Shyman replied, "Alicia you cannot be serious."

53.     Plaintiff replied explaining how terrible her migraine was and explained she was unable to find any relief. Plaintiff explained, "not sure if triggered by weather or just plain old migraine…I did read covid can worsen and increase your migraines if you are a sufferer. I don't have apt with neuro until Jan 9 but hopefully I can call and speak to someone in office today. They changed my meds obviously not working. Botox might have to be next step. I can't suffer like this constantly, need to sleep it off. Nothing else I can say. It's a debilitating disability that lately has been getting worse. [Talk to you later] to let you know how I feel. I'm sorry for you and me."

54.     On or about December 17, 2022, at approximately 8:23 a.m., Plaintiff texted Ms. Shyman, "I am still not feeling well. Migraine won't let up. It's in my right eye again with no peripheral vision. So sick from all the medications didn't sleep all night. It's just got to run its course…I wish I felt better my eyes are actually swollen and I tried calling [my doctor] yesterday but never called back after hours and now it's the weekend."

55.     Ms. Shyman responded at 8:33 a.m., "Alicia it's the last weekend before Christmas and the last day before Hanukkah and two days before inventory. I absolutely cannot believe that you would even try to call out today. This is unacceptable. How could you even think to do that to Jodi and the team?"

56.     That same morning, at approximately 8:38 a.m., Plaintiff replied to Ms. Shyman, "I can't drive, I'm dizzy…my eye is messed up again and my head is falling off. there is no way I

can function there is nothing I can do. It just wipes me out, I'm not doing anything to anyone on purpose I literally have a violent migraine which makes it impossible for me to function in any capacity. It's nothing personal."

57.  Ms. Shyman replied at 8:55 a.m. and claimed, "You're killing the entire store honestly Alicia. I can't even talk to you right now. I'm sorry."  Plaintiff replied explaining, "going back to sleep feel so shitty" and Ms. Shyman retorted, "Alicia I don't feel bad. Everyone here is sick and come in [because] we are a team. I cannot talk to you any longer."

58.  On or about January 9, 2023, Plaintiff saw her neurologist, Dr. Klinger. Dr. Klinger then wrote Plaintiff a letter for work explaining, "Alicia Lewis is a patient in my neurological practice. She has several issues, the most significant of which is chronic frequent migraines. She has been refractory to treatment for a long time. We continue to try different medications to try to get her symptoms controlled. Please excuse her absences from work, they are unavoidable given her condition."

59.  On or about January 14, 2023, Plaintiff was not feeling well and texted Ms. Shyman to inform her Plaintiff would be out sick. Plaintiff explained, "morning, messaged Linda Thursday, horrible reaction to meds, full blown migraine, spoke with Dr yesterday gave me new Rx woke up again debilitating migraine, tried to sleep it off a little longer still feeling so sick. This has taken over my life. I made an attempt but am really in extreme pain and again major stomach issues only took one of the new pills so far, I'm trying but I seriously can't lift my head off the pillow, Dr said covid virus had a lot to do with the frequency that I'm getting them now, so he is trying different medications. Botox might have to be the answer. I will not be in I am so depressed by this, I've never experienced pain that is so frequent. Trust me I want to be at work, this is the worst I've ever felt, and

I have been dealing with this since I'm a teenager. I beg you to understand you have a detailed handwritten note from Dr. He is wonderful trying everything to make me better hopefully once this new preventative med kicks in it will help."

60.     Ms. Shyman then replied at 8:50 a.m., "you have no loyalty to anyone here or your job. I've never met anyone like this. I can't. continue. to have the same conversation daily."

61.     Plaintiff replied at 8:52 a.m. explaining, "it's not daily and I do my job…when I get an attack like this, I seriously can't function…I don't know what other proof you need of that." Ms. Shyman then replied, "please call Andrea after 10. thank you."

62.     On or about January 23, 2023, at approximately 8:25 a.m., Plaintiff texted Ms. Shyman and explained "Hi. Had horrible weekend after I left on Friday it just got worse medicine wasn't helping was in bed most of the weekend didn't even go see the baby yesterday, was sick all night can't take another pill. Waiting for Dr office to open couldn't speak with him all weekend he needs to change the medicine. Hopefully I'll hear back from him during day and not after hours in the meantime I'm still in horrible pain and having the eye issue again which is making me extremely dizzy and nauseous, please understand I don't want to feel like this."

63.     On or about January 24, 2023, Plaintiff once again suffered a terrible migraine and explained, "there is no way, Celia I need to speak to Dr…I suffered all weekend." Ms. Shyman again responded in a cruel and apathetic manner, and shamed Plaintiff for missing another day of work.

64.     On or about February 1, 2023, at approximately 8:03 a.m., Plaintiff texted Ms. Shyman explaining she would not make it into work as she was suffering from another pounding migraine.

65.     Ms. Shyman replied, "Alicia are you kidding me? You came to work one day in two weeks." Plaintiff then explained, "I had days off, you cut me days and I was sick the others. It wasn't two weeks…I can't help it I wanted to talk to you yesterday, but you were so busy. I am suffering terribly with physical and mental pain now. This has now become part of my life and I'm trying to deal with it medically."

66.     A few days later, in or about early February 2023, Ms. Shyman texted Plaintiff, "booking camp [appointments] left and right so need you better by March!" Plaintiff responded with a thumb up emoji, as she felt unable to explain to Ms. Shyman that Plaintiff was unable to simply cure her disability in a month.

67.     On or about February 1, 2023, at approximately 8:36 a.m. Plaintiff texted Ms. Shyman explaining she would be out sick. Plaintiff explained, "I'm working with my doctors, I need to see if the new medications start to kick in, all I know is today it's terrible. Hopefully tomorrow I'll feel better, trust me this has now taken over my life and it's extremely difficult because I still need to work. I have no answers, we will talk when I come in., peacefully, I can't handle the stress right now. I'm going to sleep it off today and hopefully tomorrow I will be ok…I'm going back to bed sleep is the only thing that helps, I'm sorry, this is nothing personal, I'm dealing with a lot of sh*t…just got to not allow it to affect my health, I'll speak with you when you are in."

68.     That same day, at approximately 8:49 a.m., Ms. Shyman replied, "I have absolutely nothing to say on this situation any longer. All conversations can be with Andrea from here on out [because] you obviously have no respect for me. Thank you."

69.     Plaintiff replied as soon as she saw the message and explained, "I just saw this because I've been sleeping. Celia this has nothing to do with respect, I have amazing respect for you and how you handle yourself especially with what you are dealing with…"

70.     Indeed, Defendant repeatedly shamed, harassed, and degraded Plaintiff whenever she took sick time. Further, when Plaintiff reported to work, she faced frequent lectures, yelling, and degrading comments shaming Plaintiff for requiring sick leave and accusing Plaintiff of not being "loyal," having "no respect," and not being a "team player."

71.     On or about February 4, 2023, at approximately 8:00 a.m. Plaintiff texted Ms. Shyman and explained, "I am not feeling well. I am in bad shape and not adjusting to this new medication. It's really bad depression I actually had a hallucination the other night from the medication. I am extremely beyond from the headaches and my Dr hasn't been in I've spoken to his PA who has been helping me till he is back on Tuesday, and I have an appointment so as of now I'll be out Monday as well. I am instructed to stay home, de stress, rest till I see my [doctor], Ira working half day to stay with me we boarded the dog…I'd call but I've been crying for 2 days, and I don't want to cry on the phone.  You have all the documents as to my condition it has worsened to this. I will keep you updated as to how I am feeling right now. I'm a mess, I don't know how it got this bad. Please don't have Andrea call me I will not answer there is nothing more to explain…sorry…and I do RESPECT you. Please respect me now."

72.     On or about February 7, 2023, Plaintiff once again visited Dr. Klinger due to her persistent and debilitating migraines. Dr. Klinger then wrote Plaintiff another doctor's note stating, "Alicia Lewis is followed for migraines HA; that also triggers this issue. She is being

treated on new medications. She had difficulty with the last med we tried. I would recommend a week to get used to new medication…Please accommodate."

73.     Later that same day, Plaintiff texted the doctor's note to Ms. Shyman and explained, "Just returned from [doctor,] I will return to work following his instructions, I will be in [Wednesday the 15th] I have the schedule for that week. Note attached."

74.     In or about February 2023, at approximately 4:56 p.m., Plaintiff texted Ms. Shyman and explained, "hi, just letting you know I won't be in tomorrow, to avoid a texting war in the morning, I have been throwing up all afternoon and the pain is still debilitating."

75.     Ms. Shyman replied then replied in an apathetic tone, "the right thing to do would be to take your medicine and call in the store in the morning after you sleep. You don't know how you will feel when you wake up. Do not text me. Call the store."

76.     On or about February 14, 2023, Plaintiff called out of work and explained she needed to go see her doctor.

77.     That same day, at approximately 8:35 a.m., Ms. Shyman replied, "Alicia I'm sorry but I highly suggest you coming to work today." Plaintiff replied immediately explaining, "I'm sorry but I need to see if I can possibly get to a [doctor]. I'm in horrible pain, I cannot work in this pain."  Ms. Shyman then replied, "please send me a doctor's note to excuse you by 10 o'clock today at your shift that you're supposed to be in for."

78.     Later that same morning, on or about February 14, 2023, Plaintiff visited Dr. Klinger's office again and obtained an updated doctor's note which explained, "Alicia Lewis was unable to obtain the recent medication change. She was delayed starting a few days. She is cleared to return to work 2/17/2023, thank you for your understanding."

79.     Later that same morning, by 10:00 a.m., Plaintiff texted Ms. Shyman the doctor's note.

15

80.   On or about February 18, 2023, Plaintiff visited the American Family Care Urgent Care Center due to severe pelvic pain and a terrible migraine. Plaintiff was examined by Physician Assistant Faiza Javed ("Mr. Javed") and ordered to, among other things, "avoid triggers or exacerbating activities, drink plenty of fluids, get plenty of rest."

81.   Plaintiff provided the doctor's note to Ms. Shyman but was once again treated with disdain.

82.   In the weeks that followed, Plaintiff noticed she was consistently being scheduled for less hours each week. By early April 2023, Plaintiff was down to only two days per week. Then, for the week of April 16, 2023, Plaintiff was scheduled for a mere single day.

83.   Finally, by late April 2023, Defendant stopped scheduling any work hours for Plaintiff.

84.   To date, Defendant has not officially terminated Plaintiff. However, Defendant has failed to schedule Plaintiff for any shifts or work hours for Plaintiff since April 2023.

85.   Defendant acted in violation of the law by failing to make a good faith effort to accommodate Plaintiff's disability and by failing to engage in an interactive process with Plaintiff to meaningfully discuss Plaintiff's disability, needs, and reasonable accommodations to assist Plaintiff with her duties.

86.   Instead, Defendant treated Plaintiff in a hostile manner and retaliated against Plaintiff by cutting her hours and refusing to assign Plaintiff any shifts.

87.   Indeed, to date, Defendant has failed to engage in any meaningful discussion with Plaintiff regarding extended leave, reasonable accommodations, or any assistance that could allow Plaintiff assistance with completing her duties.

88.   Indeed, Defendant at no point asked Plaintiff how Plaintiff's disability would affect Plaintiff's ability to perform her duties, nor did Defendant engage in an interactive process with Plaintiff regarding possible accommodations that might help Plaintiff.

16

89.   Defendant's actions and conduct were intentional and intended to harm Plaintiff.

90.   As a result of Defendant's actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, demeaned, belittled, and emotionally distressed.

91.   As a result of Defendant's actions, Plaintiff has suffered a loss of confidence, a loss of security, and loss of joy.

92.   Further, as a result of Defendant's actions, Plaintiff has suffered extreme feelings of anxiety, depression, difficulty sleeping, feelings of panic, and feelings of hopelessness.

93.   As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

**FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE ADA**

94.   Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully stated herein.

95.   Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

96.   Title 42 of the Americans with Disabilities Act ("herein "ADA") of 1990, Chapter 126, Subchapter I, Section12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees,

employee compensation, job training, and other terms, conditions, and privileges of employment."

97.  Plaintiff's diagnosis of chronic migraines was and is a health impairment that substantially limits one or more of Plaintiff's major life activities. Specifically, Plaintiff's disability affects Plaintiff's ability to sleep, concentrate, communicate, think, drive, walk, interact with others, work, and eat.

98.  Plaintiff is a qualified individual who could perform the essential functions of her employment with a reasonable accommodation as defined by § 12111(8) of the ADA.

99.  Defendant acted in violation of the law by failing to make a good faith effort to accommodate Plaintiff's disability and by failing to engage in an interactive process with Plaintiff to meaningfully discuss Plaintiff's disability, needs, and reasonable accommodations to assist Plaintiff with her duties.

100.  Defendant discriminated against Plaintiff on the basis of Plaintiff's disability as discussed herein.

101.  Defendant knowingly and intentionally discriminated against Plaintiff because of her disability.

102.  Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADA when it refused to provide a reasonable accommodation for her disability.

## SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER THE ADA

103.  Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully stated herein.

104.    The ADA prohibits retaliation, interference, coercion, or intimidation against an employee

        who engages in protected activity.

105.    42 U.S.C. § 12203 provides:

> Retaliation. No person shall discriminate against any individual
> because such individual has opposed any act or practice made
> unlawful by this chapter or because such individual made a charge,
> testified, assisted, or participated in any manner in an investigation,
> proceeding, or hearing under this chapter.
>
> Interference, coercion, or intimidation. It shall be unlawful to
> coerce, intimidate, threaten, or interfere with any individual in the
> exercise or enjoyment of, or on account of his or her having
> exercised or enjoyed, or on account of his or her having aided or
> encouraged any other individual in the exercise or enjoyment of, any
> right granted or protected by this chapter.

106.    Plaintiff engaged in protected activities by requesting time off for her health and by

        objecting to Defendant's discriminatory treatment.

107.    As described herein, immediately after Plaintiff engaged in protected activities, Defendant

        retaliated against Plaintiff.

108.    Defendant would not have terminated Plaintiff but for Plaintiff's disability and objections

        to Defendant's discriminatory treatment.

109.    Such retaliatory treatment would dissuade any reasonable employee from making or

        supporting a similar complaint of discrimination.

110.    As a result of Defendant's unlawful discriminatory conduct in violation of the ADA,

        Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to

        an award of monetary damages and other relief.

111.    As a result of Defendant's unlawful discriminatory conduct in violation of the ADA,

        Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress,

including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

112.   Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

**THIRD CAUSE OF ACTION**
**DISABILITY DISCRIMINATION UNDER THE NYSHRL**

113.   Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully stated herein.

114.   New York Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

115.   As described herein, Defendant discriminated against Plaintiff on the basis of her disability (Chronic Migraines) in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, disparate treatment of Plaintiff based on her disability.

116.   Defendant discriminated against Plaintiff on the basis of Plaintiff's disability as described herein.

117.    As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

118.    As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

119.    Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**RETALIATION UNDER THE NYSHRL**

120.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully stated herein.

121.    Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article.

122.    Plaintiff engaged in protected activities by requesting time off for her health and by objecting to Defendant's discriminatory treatment.

123.    As described herein, immediately after Plaintiff engaged in protected activities, Defendant retaliated against Plaintiff.

124.    Defendant would not have terminated Plaintiff but for Plaintiff's disability and objections to Defendant's discriminatory treatment.

125. Such retaliatory treatment would dissuade any reasonable employee from making or supporting a similar complaint of discrimination.

126. As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

127. As a result of Defendant's retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

128. Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## **JURY DEMAND**

129. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant participated in unlawful employment practices prohibited by the ADA and NYSHRL in that Defendant discriminated against Plaintiff on the basis of her disability and created a hostile work environment;

B. Awarding damages as provided by statute under the provisions of the ADA and NYSHRL;

C.      Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

D.      Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E.      Awarding Plaintiff punitive damages;

F.      Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

G.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.


Dated:  Garden City, New York
        September 9, 2024


                                            **PHILLIPS & ASSOCIATES,
                                            ATTORNEYS AT LAW, PLLC**

                                    By:     _____/s/_____
                                            Joshua Friedman
                                            585 Stewart Avenue, Suite 410
                                            Garden City, New York 11530
                                            T: (212) 248-7431
                                            F: (212) 901-2107
                                            jfriedman@tpglaws.com